United States District Court
Southern District of Texas
**ENTERED**
May 02, 2018
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| WILLIAM GERALD FITZGERALD, TDCJ #1860537, § § § Plaintiff, § VS. § § HARRIS COUNTY SHERIFFS OFFICE, *et al*, § § Defendants. § | CIVIL ACTION NO. H-15-1330 |

## MEMORANDUM OPINION AND ORDER

Plaintiff William Gerald Fitzgerald (TDCJ # 1860537) ("Fitzgerald"), a state inmate proceeding *pro se* and *in forma pauperis*, filed this civil rights complaint under 42 U.S.C. § 1983 alleging that he was subjected to excessive force when he was confined in the Harris County Jail. On August 15, 2017, the Court dismissed all defendants except Myron Nelson ("Nelson"), a jailer at the Harris County Jail when the incident at issue occurred. Docket Entry No. 56. Nelson was personally served by a Deputy United States Marshal on August 23, 2016 (Docket Entry No. 30 [under seal]), but never filed an answer in this case and his time to do so expired long ago. *See* Fed. R. Civ. P. 12(a).

On October 13, 2017, Fitzgerald moved for default judgment against Nelson. (Docket Entry No. 63). On December 15, 2017, the Court ordered Nelson to show cause in writing why default should not be entered against him pursuant to Rule 55 of the Federal Rules of Civil Procedure. Docket Entry No. 66. Nelson never responded to the Order to Show Cause, and the Court subsequently ordered the entry of default against Nelson and set a hearing date of April 18, 2018 to determine the amount of damages for a default judgment. Docket Entry No. 71.

At the April 18, 2018 hearing, Fitzgerald testified regarding the damages he sustained in connection with the May 18, 2013 blow to his eye. Nelson also appeared in this case for the first time at the hearing without the representation of counsel and testified briefly about his recollection of the events of May 18, 2013. The Court has considered the testimony of Fitzgerald and Nelson regarding damages, Fitzgerald's affidavit, Fitzgerald's medical records, Harris County investigative records and photographs of the incident, and the applicable law, and concludes as follows.

**I.     BACKGROUND**

On May 18, 2013, Fitzgerald was an inmate at the Harris County Jail ("Jail") and Nelson was a jailer. *See* Docket Entry No. 50 ("2d Am. Complaint").[1] Early that morning after getting his breakfast, Fitzgerald asked to go to the Jail medical department. When his request was refused, Fitzgerald became angry and slammed the door to his 8-man cell. Nelson, "acting in response to a noticeable slam of a jail door," approached Fitzgerald and directed him to a sally-port where he instructed Fitzgerald to face the wall. 2d Am. Complaint at 2. Nelson then struck Fitzgerald in the right eye, causing it to bleed profusely and resulting in significant damage to the eye tissue. *Id.* As he struck Fitzgerald, Nelson allegedly stated, "that will teach you to slam my doors!" *Id.* Fitzgerald asked Nelson for his name, but Nelson covered up his name tag and refused to answer. *Id.*

As a result of the altercation with Nelson, Fitzgerald lost his vision in his right eye and asked to go to the medical department. *Id.* Right after the incident took place, Officer Jonathan Viningre ("Viningre"), a Sergeant employed at the Jail who was assigned third shift supervisor

---

[1] The Second Amended Complaint is the live pleading in the case. Because default has been entered against Nelson, all well-pleaded allegations in Fitzgerald's pleadings are deemed admitted for the purposes of liability. *See Posos v. Ramos*, --- F. Supp.2d ----, 2011 WL 13180219 (W.D. Tex. Jun. 15, 2011).

on May 18, 2013, observed that Nelson's name tag was missing from his uniform at the time Fitzgerald was taken to the Jail medical department.[2]

Fitzgerald was seen by the Jail's medical doctor, Dr. Hamani, who immediately sent him to Ben Taub Hospital.[3] Fitzgerald received 12 stitches in his cornea. *Id.* The lens of his eye was forced out by the blow to his face and was no longer in Fitzgerald's eye. The iris of the eye was also torn and protruded out of the eye, requiring surgical removal of part of the iris and leaving Fitzgerald with permanent dilation of his pupil, loss of vision in his right eye, sharp blinding pain, and a sensitivity to light that now causes him a dull pain on a daily basis. *Id.* Medical doctors at Ben Taub, and then later at John Sealy Hospital, have stated that it is unlikely that Fitzgerald will ever regain vision in his right eye.

At the April 18, 2018 hearing regarding damages, Fitzgerald relayed the version of events as set forth above, and stated that he forgives Nelson and does not believe Nelson intended to mess up his eye to the extent that he did. Fitzgerald added that he does not excuse Nelson's actions and thinks it is only fair that Nelson pay for the damage that Nelson caused to his eye. Fitzgerald testified that doctors at the John Sealy Hospital have told him that they are not likely to succeed in restoring his vision. Fitzgerald stated, and the medical records also show, that he has very limited vision in his right eye, only seeing shadows and movement with no depth perception. Fitzgerald testified that he had blinding, stabbing pain when the incident occurred, particularly when he arrived at Ben Taub Hospital and had surgery to repair his eye. He described the pain as ten times worse than being poked in the eye with a tree branch. He also experiences pain on a daily basis, describing it as a dull pain with sensitivity to light. Fitzgerald

---

[2] *See* Docket Entry No. 48 at 8 (OIG sworn employee statement of Jonathan Viningre).

[3] 2d Am. Complaint at 2.

further testified that his doctors have stated that the cloudiness in his right eye, which is readily observable, is the result of an immune reaction in his eye.

Fitzgerald stated that he has not had to pay for medical expenses while he has been incarcerated and that the doctors do not give him a good prognosis for eye surgery in the future, although he may pursue additional treatment or a second opinion from a different provider following his release from prison.

Fitzgerald also testified that before he was imprisoned most recently, following a conviction for felony DWI, he worked as an electronics technician for about 20 years for Compaq computers, making about $20 an hour. Following his employment at Compaq, he worked for another company doing electronics for downhole oil tools. He acknowledged that after the last time he was incarcerated he worked at McDonald's for minimum wage. In prison, he has been working towards his certification to change careers to be a licensed chemical dependency counselor because he wants to help other addicts and alcoholics with their chemical dependency problems. He stated that he believes there is currently a high demand for licensed counselors and that they make about $17-18 an hour.

Fitzgerald testified that he has paid a total of $100 in medical expenses while he has been incarcerated, but that those were not related to his eye problem. He also testified that his copying and postage costs for this lawsuit are $200. The record further reflects that the filing fee assessed against him in the collection order is $350 in monthly installments.

Nelson testified, at the hearing on April 18, 2018, that he does not recall hitting Fitzgerald, but that someone stated that Fitzgerald had cancer in his eye and that it was dripping. Nelson does recall sending Fitzgerald to the clinic. Nelson is presently unemployed, but is working towards obtaining a commercial driver's license (CDL). Nelson, *pro se*, did not present

controverting evidence regarding the extent of Fitzgerald's injuries.

Fitzgerald claims that Nelson, in his individual capacity, violated his Eighth and Fourteenth Amendment rights by using excessive force against him in the jail and by singling him out as a "class of one" by treating him differently from others who have been accused of slamming doors.[4] Fitzgerald did not specify the amount of damages he seeks in his Second Amended Complaint, but in his Affidavit supporting his Motion for Default Judgment, he seeks $250,000 in compensatory damages, $1 million in punitive damages, and $5,000 in costs. *See* Docket Entry No. 64 at 3-4.

## II. LEGAL STANDARDS

"A defaulting party is deemed to have admitted all well-pleaded allegations of the complaint pertaining to liability." *Posos v. Ramos*, --- F. Supp.2d ----, 2011 WL 13180219 (W.D. Tex. Jun. 15, 2011). Rule 55 provides a two-step process for entering default judgments. First, default is entered when a party shows "by affidavit or otherwise" that another party "against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend . . . ." FED. R. CIV. P. 55(a). Second, after default is entered, a default judgment may be entered under Rule 55(b). If damages sought against a defendant are not ascertainable from documentary evidence or affidavits, the Court may hold a hearing to determine the amount of damages. *See UnitedHealthcare Ins. Co. v. Holley*, No. 17-40354, 2018 WL 775291, at *3 (5th Cir. Feb. 7, 2018) (citing FED R. CIV. P. 55(b)(2)).

The amount of compensatory damages in section 1983 cases is determined based on principles derived from the common law of torts, especially where the constitutional injury results in physical injury. *See Memphis Cmty. Sch. Dist. v. Stachura,* 477 U.S. 299, 306-07

---

[4] 2d Am. Complaint at 3.

(1986); *Carey v. Piphus,* 435 U.S. 247, 254 (1978) (holding that the basic purpose of a damages award under section 1983 is "to compensate persons for injuries caused by the deprivation of constitutional rights"). Thus, the elements of damages allowable in comparable common law tort actions for physical injury guide the determination of compensatory damages, which can include, *inter alia*, damages for loss of earnings, pain and suffering, past and future medical expenses, and mental and emotional distress. *See Carey*, 435 U.S. at 257-58; *see also Cowart v. Erwin*, 837 F.3d 444, 455 (5th Cir. 2016). "When a damage award includes recovery for pain and suffering, which are 'to a large degree, not susceptible to monetary quantification,' the [fact finder] 'has especially broad leeway.'" *Cowart*, 837 F.3d at 455 (quoting *Seidman v. Am. Airlines, Inc.*, 923 F.2d 1134, 1141 (5th Cir. 1991)). On default judgment, a plaintiff must prove a causal connection between the amount of damages sought and the injuries suffered. *Posos*, 2011 WL 13180219, at *6.

Whether punitive damages are awarded is in the discretion of the fact-finder and is based on whether the conduct exhibited "reckless or callous disregard for the plaintiff's rights, as well as intentional violations of federal law." *Smith v. Wade*, 461 U.S. 30, 34–36 (1983) (citing *Adickes v. Kress & Co.,* 398 U.S. 144, 233 (1970)). The standard for awarding punitive damages is distinct from that for awarding compensatory damages in section 1983 cases because the former are the result of "a discretionary moral judgment." *Id.* at 52. Thus, punitive damages may be awarded only if the official conduct is "motivated by evil intent" or demonstrates "reckless or callous indifference" to a person's constitutional rights. *Id.* at 34-36; *see also Sockwell v. Phelps*, 20 F.3d 187, 192 (5th Cir. 1994). Nonetheless, even if a party has made a proper showing to justify an award of punitive damages, the trier of fact's decision whether to award such damages is discretionary. *Creamer v. Porter,* 754 F.2d 1311, 1319 (5th Cir.1985).

The reviewing court may not reverse the award of punitive damages absent an abuse of discretion. *Sockwell*, 20 F.3d at 192.

### III.  FINDINGS OF FACT

After a careful review of the record, the evidence on file, the April 18, 2018 testimony of the parties, and the applicable law, the Court finds by a preponderance of the evidence as follows:

1. Fitzgerald was a credible witness.

2. Nelson was personally served with the complaint and summons according to Federal Rule of Civil Procedure 4 on August 23, 2016.

3. Nelson was served with Fitzgerald's motion for default judgment and affidavit on October 18, 2017; the show cause order on December 21, 2017; and the order of entry of default and setting the hearing on March 31, 2018 at least seven (7) days prior to the April 18, 2018 hearing in accordance with Federal Rule of Civil Procedure 55(b)(2).

4. Nelson failed to answer or defend against Fitzgerald's claims for affirmative relief.

5. As outlined in Fitzgerald's pleadings, which are deemed admitted, Nelson used force against him that was excessive to the need by striking him in the eye and causing significant damage.

6. Fitzgerald sustained compensatory damages for the injuries he suffered in violation of his civil rights by Myron Nelson under 42 U.S.C. § 1983.

7. Exhibits and sworn testimony show that Nelson struck Fitzgerald with such force

that it caused major damage to Fitzgerald's right eye, causing the uveal tissue of the eye to seep into the cornea and the iris to tear. As a result, the iris in Fitzgerald's right eye needed to be partially removed.

8. The blow to Fitzgerald's eye was acutely painful on the day of the injury.

9. Fitzgerald suffered considerable pain in connection with his eye surgery and recuperation in the hospital after the surgery.

10. Fitzgerald suffers pain on a daily basis because of the blow to his right eye in the form of dull pain and a sensitivity to light.

11. Fitzgerald cannot see out of his right eye except for shadows and has lost substantially all of his vision in his right eye due to the blow to his eye from Nelson on May 18, 2013.

12. Fitzgerald has lost his depth perception because he cannot see out of his right eye.

13. Even with surgeries, Fitzgerald is unlikely to regain the vision in his right eye.

14. Fitzgerald did not lose money related to his employment from the date of the injury until now because he was been incarcerated during that time.

15. Fitzgerald's potential loss of future income is speculative and cannot be reasonably determined based on the evidence adduced in this case.

16. Fitzgerald has not incurred medical expenses in connection with this injury because the agencies having custody of Fitzgerald covered his medical care.

17. Future medical expenses are too speculative to determine based on the evidence showing that the effectiveness of further surgical interventions is unlikely.

18. The evidence of Fitzgerald's pain and suffering, along with the long-term loss of sight in Fitzgerald's right eye, is sufficient to support the requested compensatory damages of $250,000 in this case.

19. Although Nelson is liable for compensatory damages for the pain and suffering and loss of vision that Nelson caused as the result of his excessive use of force, the evidence is insufficient to support a finding that Nelson acted with "reckless or callous disregard for the plaintiff's rights," *Smith*, 461 U.S. at 34-36, for purposes of awarding punitive damages in this case.

20. Fitzgerald spent $200 for legal supplies and postage.

21. The filing fee for this case is $350.

## IV. CONCLUSIONS OF LAW

The Court makes the following conclusions of law based on the evidence and facts set forth above:

1. Fitzgerald made the required showing under Rule 55.

2. Because the damages sought were not readily ascertainable from documentary evidence or affidavits, a hearing on damages was necessary to determine the amount of damages. FED. R. CIV. P. 55(b)(2).

3. Entry of default judgment under Rule 55 against Nelson is appropriate.

4. Based on Fitzgerald's testimony and the medical record evidence on file, Fitzgerald proved a causal connection between the damages he seeks and the injuries he suffered. *See Posos*, 2011 WL 13180219, at *6.

5. Fitzgerald is entitled to receive from Nelson $250,000.00 in compensatory

damages for the loss of vision in his right eye, acute pain and suffering on or around the time of the injury, and daily pain and suffering as a result of the injury.

6. Fitzgerald is entitled to receive from Nelson $200.00 for legal supplies and postage, and $350.00 for filing fees, for a total of $550.00 for the costs of this suit.

7. Because there is insufficient evidence that Nelson acted with the requisite reckless or callous disregard for Fitzgerald's rights, the Court declines to award punitive damages.

8. Altogether, Fitzgerald is entitled to damages and costs from Myron Nelson totaling $250,550.00. Fitzgerald is responsible for collecting these damages and costs. Before seeking any post-judgment relief from this Court, Fitzgerald must first attempt to execute on the judgment.

9. Fitzgerald is entitled to post-judgment interest at the applicable legal rate beginning with the date of the entry of judgment.

10. If any of the foregoing Findings of Fact constitute Conclusions of Law, they are adopted as such; and if any of the foregoing Conclusions of Law constitute Findings of Fact, they are adopted as such.

## V. CONCLUSION AND ORDER

Based on the foregoing, the Court **ORDERS** and **ADJUDGES** as follows:

1. Plaintiff's Motion for Default Judgment is **GRANTED**, and the Clerk shall enter judgment in favor of plaintiff William Gerald Fitzgerald and against Myron Nelson on all issues of liability with respect to claims brought against Myron

Nelson in his individual capacity pursuant to 42 U.S.C. § 1983.

2. Defendant Myron Nelson is liable to Plaintiff William G. Fitzgerald for:

   (a). Compensatory damages in the amount of $250,000.00 for the violation of William Gerald Fitzgerald's rights under 42 U.S.C. § 1983;

   (b). Costs of court in the amount of $550.00; and

   (c). Post-judgment interest as provided by law.

3. This case is **DISMISSED** with prejudice. A separate final judgment will issue.

4. All other pending motions, if any, are **DENIED**.

The Clerk shall enter this Order and send a copy to the parties.

SIGNED at Houston, Texas, this 1st day of May, 2018.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE